UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TDC, L.L.C. | ) | |
|     Plaintiff | ) ) ) | |
| v. | ) ) | |
| STOLT-NIELSEN TRANSPORTATION GROUP B.V., and | ) ) ) | 13-cv-00670-JJB-SCR |
| STOLT TANKERS B.V. | ) ) ) | |
|     Defendants. | ) ) | |

**RULE 15(a) FIRST AMENDED COMPLAINT**

Plaintiff, TDC, L.L.C., a Louisiana limited liability company, through its undersigned attorneys, brings this Complaint against defendants Stolt-Nielsen Transportation Group B.V. and Stolt Tankers B.V. (collectively referred to as "The Stolt Companies"). In support of its Complaint, TDC, L.L.C. states as follows:

**NATURE OF THE CASE**

1. This is a diversity action brought under state law in order to redress the wrongful conduct of The Stolt Companies consisting of the violation of contract and quasi-contract, misrepresentation, detrimental reliance, unjust enrichment, and negotiorum gestio.

**JURISDICTION AND VENUE**

2. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1332. Plaintiff is a Louisiana Limited Liability Company owned, ultimately, by a publicly traded, Delaware formed Limited Partnership. On information and belief, The Stolt Companies are citizens of The

-1-

Netherlands, formed under the laws of The Netherlands, and whose principle place of business is in Rotterdam, The Netherlands. The amount in controversy exceeds $75,000, exclusive of interest and costs.

3. This Court may also exercise personal jurisdiction over The Stolt Companies under La.R.S. 13:3201 in that The Stolt Companies acted together, in combination, individually and through employees and agents to cause injury to TDC in Louisiana. The exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4. Venue is proper in the Court under 28 U.S.C. §1391. A substantial part of the events, acts, omissions, and damages giving rise to the claim occurred in the Middle District of Louisiana.

**PARTIES**

5. Plaintiff, TDC, L.L.C. ("TDC"), is a Louisiana limited liability company domiciled in Ruston, Louisiana, with its operational offices in Baton Rouge, Louisiana in the Middle District of Louisiana, and whose sole member is Davison Petroleum Supply, LLC.

    a. Davison Petroleum Supply, LLC is a Delaware Limited Liability Company whose sole member is Genesis Davison, LLC.

    b. Genesis Davison, LLC is a Delaware Limited Liability Company whose sole member is Genesis Crude Oil, LP.

    c. Genesis Crude Oil, LP is a Delaware Limited Partnership wholly owned by:
        1) Genesis Energy, LP, a publicly traded Delaware Limited Partnership; and
        2) Genesis Energy, LLC, a Delaware Limited Liability Company.

d. Genesis Energy LLC is, in turn, wholly owned by Genesis Energy LP.

6. On information and belief, defendant Stolt-Nielsen Transportation Group B.V. ("Stolt Transportation") is a foreign corporation or economic entity formed under the laws of The Netherlands whose principle place of business is in Rotterdam, The Netherlands. It regularly conducts business in Louisiana and in her sister States, and it may be served through a corporate officer, wherever located, at 15635 Jacintoport Blvd., Houston, Texas 77015, or at 800 Connecticut Avenue, 4th Floor East, Norwalk, Connecticut 06854.

7. On information and belief, defendant Stolt Tankers B.V. ("Stolt Tankers") is a foreign corporation or economic entity formed under the laws of The Netherlands whose principle place of business is in Rotterdam, The Netherlands. It regularly conducts business in Louisiana and in her sister States, and it may be served through a corporate officer, wherever located, at 15635 Jacintoport Blvd., Houston, Texas 77015, or at 800 Connecticut Avenue, 4th Floor East, Norwalk, Connecticut 06854 or its agent, Stolt-Nielsen Transportation Group B.V. and/or its trading manager James S. Fleming.

**GENERAL ALLEGATIONS**

8. At all material times, TDC was in the business of manufacturing and marketing Sodium Hydrosulfide ("NaHS") for commercial sale. NaHS is a product with exacting specifications which TDC manufactures in West Lake, Louisiana. (NaHS is pronounced "NASH").

9. During the time relevant to this action, TDC's Louisiana manufactured NaHS product was loaded directly into ships belonging to The Stolt Companies which had sailed into West Lake, Louisiana area waters and/or was transported to the Port of Houston, Texas for

Case 3:13-cv-00670-JJB-SCR   Document 6   10/23/13   Page 3 of 20

loading onto ships belonging to The Stolt Companies which had sailed to the Port of Houston.

10. At no time was TDC in the business of receiving, transferring, storing, or disposing of hazardous waste.

11. At all material times, The Stolt Companies owned and operated a fleet of oceangoing vessels which they used in the business of conveying products throughout the waterways of the world, including those in the State of Louisiana, a state in which The Stolt Companies conducted substantial business.

12. On information and belief, James S. Fleming ("Fleming") was employed as Trading Manager and/or was an authorized representative, agent, and/or employee of Stolt Transportation and Stolt Tankers. At all material times, Fleming had actual and apparent authority to represent and conduct, and did in fact conduct, business on behalf of The Stolt Companies, including but not limited to entering into contractual agreements.

13. On information and belief, Bjarke Nissen ("Nissen") was an authorized representative, agent, and/or employee of Stolt Transportation and Stolt Tankers who came to the United States of America for the purposes of furthering The Stolt Companies' business and economic interests. Nissen served as Business Director, Atlantic Ocean Services, and/or Senior Vice President. At all material times, Nissen had actual and apparent authority to represent and conduct, and did in fact conduct, business on behalf of The Stolt Companies, including but not limited to entering into contractual agreements.

**The First Agreement**:

14. On December 22, 2009, TDC, by and through its authorized employee, Steve Nathanson, acting at TDC's Baton Rouge, Louisiana offices, signed an agreement ("The First

Agreement") with Stolt Transportation acting through Fleming its representative who had actual and apparent authority to represent and conduct business on behalf of The Stolt Companies. In The First Agreement, Stolt Transportation agreed to transport TDC's "Sodium Hydrosulfide" product - and only "Sodium Hydrosulfide" product. "Item 5" of The First Agreement expressly limits the agreement to the transportation of the product, "Sodium Hydrosulfide." The First Agreement bears no terms regarding the management and/or disposition of hazardous waste or the costs of compliance with environmental laws and regulations. See December 22, 2009, Contract of Affreightment signed by Steve Nathanson (TDC) and John S. Fleming (Stolt Transportation) attached hereto as Exh. 1.

**The Second Agreement**:

15. On May 16, 2011, TDC, by and through its authorized employee David K. Kneipp, Vice President and General Manager, acting at TDC's Baton Rouge, Louisiana offices, signed a related agreement ("The Second Agreement") with The Stolt Companies acting through Fleming their representative who had actual and apparent authority to represent and conduct business on their behalf. In said agreement, the name of the "Owner" as listed in The First Agreement was changed from Stolt Transportation to Stolt Tankers. The Second Agreement bears no terms regarding the management and/or disposition of hazardous waste or the costs of compliance with environmental laws and regulations. See April 27, 2011 (facially dated) Addendum signed by David K. Kneipp (TDC) and James S. Fleming (Stolt USA as agent for Stolt Tankers) attached hereto as Exh. 2.

**The Third Agreement**:

16. On January 12, 2012, TDC, by and through its authorized employee David K. Kneipp, Vice President and General Manager, acting at TDC's Baton Rouge, Louisiana offices, signed a related agreement ("The Third Agreement"). In The Third Agreement, Stolt Tankers appeared through Fleming its authorized representative and a Trading Manager of Stolt USA, who had actual and apparent authority to represent and conduct business on behalf of The Stolt Companies. The Third Agreement bears no terms regarding the management and/or disposition of hazardous waste or the costs of compliance with environmental laws and regulations. See October 20, 2011 (facially dated) Addendum signed by David K. Kneipp (TDC) and James S. Fleming (Stolt USA as agent for Stolt Tankers) attached hereto as Exh. 3.

17. In no part of the First, Second, or Third Agreements was there any provision for the generation, storage, transportation, management, and/or disposal of hazardous waste or of the costs associated therewith.

18. The Stolt Companies and Fleming undertook acts which led customers, including TDC, reasonably to believe that Fleming had actual and apparent authority to represent and conduct business on behalf of The Stolt Companies.

19. At all times material, Nissen was Fleming's superior and/or supervisor. He and The Stolt Companies undertook acts which led customers, including TDC, reasonably to believe that Fleming had actual and apparent authority to represent and conduct business on behalf of The Stolt Companies.

20. At all times material, TDC employees, including those who were located and acting in Baton Rouge, Louisiana, caused TDC's NaHS product to be transferred from West

Lake, Louisiana to Houston, Texas for delivery to The Stolt Companies. The Stolt Companies caused the vessels they owned and controlled to arrive at the Port of Houston.

21. Because TDC owned no tanks at the Port of Houston that were suitable for NaHS, TDC leased a single tank in Houston for storage of the product pending delivery to The Stolt Companies for transport.

22. Between March 18 and March 20, 2011, The Stolt Companies caused their ship, the Stolt Facto, to arrive in Houston, Texas and take possession of TDC's NaHS product. The Stolt Facto was owned, operated, captained, and/or controlled by The Stolt Companies.

23. The Stolt Companies and the Captain of the Stolt Facto were timely provided the appropriate MSDS (Material Safety Data Sheet) for TDC's NaHS product. They knew and had reason to know that it was a product that was hazardous by its characteristics. See TDC Sodium Hydrosulfide Solution Material Safety Data sheet attached hereto as Exh. 4. See also RCRA (infra).

24. On, about, or around May 6, 2011, The Stolt Companies and the Stolt Facto contaminated and destroyed TDC's NaHS product by mixing it and allowing it to be mixed with Arcol Polyol F30340 ("Polyol"), a chemical product not manufactured by TDC. See May 6, 2011, 6:19 AM, email correspondence between Peter Knoth (Stolt Tankers) and Amy Martin and Robert Burns (both TDC) attached hereto as Exh. 5. See also May 6, 2011, 9:52 AM email correspondence between same parties attached hereto as Exh. 6.

25. The value and loss of value of TDC's NaHS product is the subject of other litigation and is not material herein.

26. The material on board the Stolt Facto, having been contaminated and destroyed, was no longer NaHS, no longer bore the characteristics of NaHS, and could not be classified as a product. It was waste. It was hazardous waste by characteristics (RCRA). The Stolt Companies and the Stolt Facto had generated hazardous waste ("Stolt's hazardous waste"), the management and disposal of which were, by operation of law, The Stolt Companies' responsibility.

27. The Stolt Companies refused to recognize the obligations imposed by law which compelled the proper disposal of Stolt's hazardous waste.

28. United States law enacts and enforces comprehensive rules and regulations imposing significant duties and obligations on hazardous waste generators, like The Stolt Companies and the Stolt Facto, and compels a well regulated and permitted disposal of such hazardous waste once it has been generated. See Resource Conservation and Recovery Act (RCRA: 42 USC §§6901-6991k), See also Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA: 42 USC §§9601-9675), See also the Clean Water Act (CWA: 33 USC §§1251 et seq).

29. The Stolt Companies conceived and practiced a scheme whereby they endeavored to deny that the Stolt Facto had generated, and was in possession of, hazardous waste; to avoid laws, regulations and costs governing the disposal of Stolt's hazardous waste; and wrongfully to cause TDC to bear those costs.

30. The Stolt Companies represented to TDC that "...there is a good chance your cargo will be acceptable for discharge." The Stolt Companies knew and/or should have known that they had destroyed the material, that they had generated hazardous waste, and that it was no longer lawful to dispose of it as "cargo." See May 6, 2011, 3:07 PM email correspondence

between Peter Knoth (Stolt Tankers) and Amy Martin and Robert Burns (both TDC) attached hereto as Exh. 7.

31.     Having destroyed TDC's product and having thereby generated Stolt's hazardous waste, The Stolt Companies disingenuously insisted that Stolt's hazardous waste nonetheless "had" to be offloaded in South America: "To Remind you there is still the obligation to receive the cargo in Callao regardless." See May 6, 2011, 1:07 PM email correspondence between Peter Knoth (Stolt Tankers) and Amy Martin and Robert Burns (both TDC) attached hereto as Exh. 8.

32.     The Stolt Companies misled and mischaracterized the extent of its generation of hazardous waste by describing the Stolt Facto's event as causing a mere "color change." See May 9, 2011, email correspondence between Peter Knoth (Stolt Tankers) and Amy Martin, Robert Burns and others attached hereto as Exh. 9.

33.     Exploiting its own fault and generation of hazardous waste, The Stolt Companies demanded to be paid additional monies by TDC for further transportation of Stolt's hazardous waste. The Stolt Companies continued to levy charges for transportation as though its hazardous waste were a "product" or "cargo." The Stolt Companies knew and/or should have known that they had contaminated the material which had become Stolt's hazardous waste and which could no longer be classified as a product or cargo.

34.     The Stolt Companies endeavored to disguise and conceal their generation of hazardous waste by repeated communications to TDC referring to Stolt's hazardous waste as "your cargo" or "your product" even though the material had become The Stolt Companies' generated contaminated hazardous waste. See May 10, 2011, email correspondence between Peter Knoth (Stolt Tankers) and Bruce McElheny and others (TDC) attached hereto as Exh. 10.

See also May 9, 2011, email correspondence between Peter Knoth (Stolt Tankers) and Amy Martin, Robert Burns (TDC) and others attached hereto as Exh. 9.

35. On information and belief, The Stolt Companies knew and/or should have known that the contaminated material on board the Stolt Facto was hazardous waste. They claimed to have directed Stolt's chief chemist to coordinate sampling and testing on board the Stolt Facto while it was still in South American waters. See May 6, 2011, email correspondence between Bruce McElheny (TDC) and Peter Knoth (Stolt Tankers) and others attached hereto as Exh. 11.

36. The Stolt Companies provided misleading responses and information. When TDC asked to be told how much Polyol had leaked into the NaHS tank, The Stolt Companies deflected and answered with figures of how much NaHS had leaked into the Polyol tank. See May 11, 2011, email correspondence between Sharon Nolin (Stolt Tankers) and Robert Burns (TDC) and others attached hereto as Exh. 12.

37. The Stolt Companies endeavored to mislead and injure TDC by claiming that United States law compelled that the Stolt Facto must return Stolt's hazardous waste to the same tank in Houston, Texas that TDC had rented for purposes of storing product before Stolt took delivery. See May 10, 2011, email correspondence between Peter Knoth (Stolt Tankers) and Bruce McElheny and others (TDC) attached hereto as Exh. 10.

38. Stolt employees Peter Knoth and James S. Fleming represented to TDC employees in Baton Rouge that TDC "had" to take possession of Stolt's hazardous waste.

39. The Stolt Companies claimed they had no storage facilities available in Houston, Texas; that Stolt's hazardous waste was "cargo" not hazardous waste; and that federal law compelled that such "cargo" must be returned to the same tank from which it had originally been

-10-

obtained, regardless whether that tank remained available - as it was not.  See May 9, 2011 email correspondence between Peter Knoth (Stolt Tankers), Robert Burns (TDC), and others attached hereto as Exh. 13.

40.     The Stolt Companies later claimed they had obtained a special exemption from the United States Coast Guard to bring Stolt's hazardous waste to Houston and offload it to TDC. See June 17, 2011, email correspondence between Sharon Nolin (Stolt Tankers) and Bruce McElheny (TDC) attached hereto as Exh. 14.

41.     TDC employees in Baton Rouge, Louisiana were misled by The Stolt Companies and caused, at substantial expense, to lease two barges to receive Stolt's hazardous waste until a suitable resolution could be arranged.  See FMT Chemical Barge Transporters, LLC's invoice attached hereto as Exh. 15.

42.     On or about July 25, 2011, The Stolt Companies caused the Stolt Facto to use her pumps and equipment to pump Stolt's hazardous waste into the two barges which The Stolt Companies had wrongfully and deceptively caused TDC's Baton Rouge, Louisiana employees to lease.

43.     TDC employees in Baton Rouge, Louisiana then acted to cause the two barges to be brought from Texas, through Louisiana waterways, to Red River Terminal near Shreveport, Louisiana where it could be stored in tanks suitable for such material.  This was completed by August 1, 2011.

44.     As is required by law and regulation, TDC employees in Baton Rouge, Louisiana arranged for the proper disposal of the remaining tank wash from the barges after they had offloaded Stolt's hazardous waste.

45. Those same laws and regulations required that the Stolt Facto properly dispose of its remaining tank wash in compliance with environmental laws and regulations. Whether The Stolt Companies complied with this law remains unknown to TDC.

46. Having generated hazardous waste, transported it into the United States, and pumped it into the two barges, the Stolt Facto sailed away.

47. Neither the Stolt Facto nor The Stolt Companies undertook any effort to discharge their obligation properly to manage and/or dispose of Stolt's hazardous waste. That effort was wrongfully left to TDC employees, many of whom accomplished this effort from their Baton Rouge, Louisiana offices.

**The Fourth Agreement**:

48. On August 26, 2011, Baton Rouge based TDC employee Robert Burns asked for a meeting between TDC representatives and The Stolt Companies' representatives, Nissen and Fleming. See August 26, 2011, email correspondence between Robert Burns (TDC) and James S. Fleming (The Stolt Companies) attached hereto as Exh. 16.

49. On August 30, 2011, Fleming replied to Burns in Baton Rouge by suggesting an October meeting which he and Nissen would attend. Expressly referring to Stolt's hazardous waste as "the contamination," Fleming acknowledged the issue and anticipated the opportunity to "...make my opinions on how I can help push the matter to a satisfactory conclusion for TDC." (Said meeting was held October 10, 2011). See August 30, 2011, email correspondence between James S. Fleming (The Stolt Companies) and Robert Burns (TDC) attached hereto as Exh. 17.

50. Baton Rouge based TDC employees engaged and communicated with Clean Harbors Environmental Services, offices in Baton Rouge, Louisiana, and in Little Rock,

-12-

Arkansas to arrange for a permitted destruction and/or disposition of Stolt's hazardous waste to be completed in compliance with state and federal environmental law and regulation. This effort and these costs were and should have been The Stolt Companies' responsibility. See October 5, 2011, email correspondence between Amy Hulsey (Clean Harbors) and Trey Fegley (TDC) attached hereto as Exh. 18.

51. As a result of efforts by TDC employees in Baton Rouge, Louisiana, an October 10, 2011, meeting was held in Houston, Texas. Included on the agenda of this meeting was a line item to discuss "Contamination/Claim status update." This agenda was circulated in advance of the meeting. See agenda of meeting of Robert Burns, David K. Kneipp, and Steve Nathanson (TDC) with James S. Fleming and Bjarke Nissen (The Stolt Companies) attached hereto as Exh. 19.

52. Attending on behalf of The Stolt Companies were Nissen and Fleming, representatives of The Stolt Companies who had previously acted for The Stolt Companies and who were authorized and cloaked with actual and apparent authority to act for The Stolt Companies.

53. Three TDC employees from TDC's Baton Rouge, Louisiana offices attended the meeting. They were Steve Nathanson, David K. Kneipp, and Robert Burns, and they had authority to act for TDC.

54. At this meeting TDC representatives advised The Stolt Companies' representatives of the significant and growing cost of properly managing and disposing of Stolt's hazardous waste.

55. At this meeting The Stolt Companies representatives stated they understood and promised that The Stolt Companies would reimburse TDC for these costs.

56. Acting through Clean Harbors Environmental Services, TDC thereafter achieved final destruction and/or disposal of Stolt's hazardous waste on February 12, 2013. TDC received final billing from Clean Harbors on the March 11, 2013. <u>See</u> March 11, 2013, email correspondence from Clean Harbors to Robert Burns (TDC) and attached Clean Harbors invoice, both attached hereto as Exh. 20.

57. To date, TDC has incurred costs in the transportation, storage and disposition of Stolt's hazardous waste in an amount not less than $2,008,188.99.

## COUNT I: BREACH OF CONTRACTUAL AGREEMENT

**The Fourth Agreement**:

58. TDC re-alleges and incorporates paragraphs 1 thru 57 by reference.

59. At all times material, The Stolt Companies, Nissen and Fleming undertook such acts as to lead customers, including TDC, reasonably to believe that Nissen and Fleming had actual and apparent authority to represent and conduct business on behalf of The Stolt Companies.

60. On May 6, 2011, The Stolt Companies and the Stolt Facto generated hazardous waste which it thereafter caused to be delivered to and abandoned to the possession of TDC.

61. Federal law imposed on The Stolt Companies, as a generator of hazardous waste, the obligation of managing and/or disposing of that hazardous waste in compliance with applicable environmental laws. The Stolt Companies turned their backs on this obligation, and the Stolt Facto sailed away from United States waters. Stolt's hazardous waste was thereafter left

in land-based containers. It was managed and disposed of according to traditional land-based methods.

62. In August of 2011, TDC representatives asked for a meeting with representatives of The Stolt Companies and placed on the agenda as a discussion point "Contamination/Clause status update" for the purposes of addressing the management and disposal of the contaminated hazardous waste generated by the Stolt Facto.

63. Said meeting occurred on October 10, 2011, at which meeting The Fourth Agreement was reached in which The Stolt Companies agreed to reimburse TDC for the costs incurred in managing and disposing of the contaminated hazardous waste generated by the Stolt Facto.

64. TDC employees in Baton Rouge, Louisiana and elsewhere undertook and completed numerous efforts and acts to comply with applicable environmental law in order to manage and dispose of Stolt's hazardous waste; in doing so, TDC incurred substantial costs. Said management and disposition were completed on February 12, 2013 and TDC received final invoice for costs on March 11, 2013. See Exh. 20.

65. TDC has submitted management and disposal costs to The Stolt Companies for reimbursement pursuant to The Fourth Agreement.

66. The Stolt Companies have refused to honor The Fourth Agreement, have refused to reimburse TDC for costs incurred, and have refused all responsibility for having generated contaminated hazardous waste.

**WHEREFORE**, TDC prays for judgment against The Stolt Companies, jointly and severally, in an amount to be proven at trial, but not less than $2,008,188.99 together with legal interest thereon and for all other relief as is lawful and equitable under the premises.

## COUNT II: MISREPRESENTATION AND DETRIMENTAL RELIANCE
### (In the Alternative)

67. TDC re-alleges and incorporates paragraphs 1 thru 66 by reference.

68. TDC brings this count in the alternative.

69. At all times leading up to and during the meeting of October 10, 2011, The Stolt Companies, Nissen, and Fleming caused TDC and its representatives reasonably to believe that Nissen and Fleming had actual and apparent authority to represent and conduct, and did in fact represent and conduct, business on behalf of The Stolt Companies.

70. In the meeting of October 10, 2011, Nissen and Fleming promised TDC that TDC's costs in managing and/or disposing of the contaminated hazardous waste generated by the Stolt Facto would be reimbursed.

71. The Stolt Companies, Nissen, and Fleming knew and should have known that TDC would rely on these representations and promises.

72. Reasonably relying on these representations and promises TDC employees in Baton Rouge, Louisiana and elsewhere undertook and completed numerous efforts and acts to comply with applicable environmental law and to manage and dispose of Stolt's hazardous waste; in doing so, TDC incurred substantial costs - <u>all of which was clearly foreseeable</u>.

73. If The Stolt Companies claim that Nissen and/or Fleming were not duly authorized employees and/or representatives of The Stolt Companies, then, within the course and

-16-

scope of their employment with The Stolt Companies, Nissen and Fleming misled TDC representatives in the belief that they were, in fact, duly authorized, causing TDC to rely on such representations and promises to TDC's detriment.

74.     Under the doctrine of *respondeat superior*, The Stolt Companies are liable to TDC for the damages caused by TDC's reasonable but detrimental reliance on the representations and promises of Nissen and Fleming.

**WHEREFORE**, TDC prays for judgment against The Stolt Companies individually, jointly and severally in an amount to be proven at trial, but not less than $2,008,188.99 together with legal interest thereon and for all other relief as is lawful and equitable under the premises.

**COUNT III: UNJUST ENRICHMENT - ENRICHMENT WITHOUT CAUSE**
**(In the Alternative under Louisiana Civil Code Art 2298)**

75.     TDC re-alleges and incorporates paragraphs 1 thru 74 by reference.

76.     TDC brings this count in the alternative.

77.     The Stolt Companies and the Stolt Facto generated, transported and off-loaded contaminated hazardous waste.

78.     Federal environmental laws (see above), specifically the Resource Control and Recovery Act, impose on such entities a strict "cradle-to-grave" obligation to manage and dispose of such contaminated hazardous waste according to laws and regulations restricting management and disposal to federally permitted methods by federally licensed facilities.

79.     Although obligated to pay the cost of cradle-to-grave management and disposal of the contaminated hazardous waste it had generated, The Stolt Companies ignored and failed to comply with such laws and obligations, choosing instead to pump Stolt's hazardous waste onto

barges leased by TDC then abandoning its waste and its RCRA responsibility.

80.     By abandoning said obligations, The Stolt Companies avoided incurring the substantial costs necessary to compliance.

81.     The Stolt Companies were thereby unjustly enriched.

82.     Left in possession of Stolt's contaminated hazardous waste, TDC employees in Baton Rouge, Louisiana and elsewhere undertook and completed numerous efforts and acts to comply with applicable environmental law in order to manage and dispose of Stolt's hazardous waste; in doing so, TDC incurred substantial costs.

83.     TDC was thereby unjustly impoverished.

84.     Had The Stolt Companies obeyed federal law and complied with RCRA requirements, TDC would not have been impoverished.

85.     The Stolt Companies had neither justification nor cause to ignore and disobey the obligations imposed by law.

86.     Said environmental laws, particularly RCRA, do not create a private citizen cause of action for damages.

87.     Having been substantially impoverished, TDC is without legal remedy against The Stolt Companies, which have been substantially and unjustly enriched. TDC seeks judgment from this court to make TDC whole and to allow it to recover from The Stolt Companies the costs TDC incurred in complying with federal law, costs which The Stolt Companies were obligated to, but have not, paid.

**WHEREFORE**, TDC prays for judgment against The Stolt Companies, jointly and severally, in an amount to be proven at trial, but not less than $2,008,188.99 together with legal

Case 3:13-cv-00670-JJB-SCR   Document 6   10/23/13   Page 18 of 20

interest thereon and for all other relief as is lawful and equitable under the premises.

## **COUNT IV: NEGOTIORUM GESTIO**
**(In the Alternative under Louisiana Civil Code Art 2292)**

88.     TDC re-alleges and incorporates paragraphs 1 thru 87 by reference.

89.     TDC brings this count in the alternative.

90.     From the moment the Stolt Facto generated contaminated hazardous waste, The Stolt Companies bore the legal obligation properly to manage and dispose of the contaminated hazardous waste they had generated. This obligation became part of The Stolt Companies' patrimony.

91.     Federal environmental law, specifically the Resource Control and Recovery Act, imposed on The Stolt Companies the obligation of a "cradle-to-grave" management and disposal of its contaminated hazardous waste.

92.     The Stolt Companies are presumed to intend to comply with federal law. Compliance with said federal law was and became necessary to the proper conduct of The Stolt Companies' business once it had generated hazardous waste.

93.     The Stolt Companies are formed and operate under the laws of The Netherlands. The Stolt Companies' failure to manage and dispose of the contaminated hazardous waste they generated can only be explained by The Stolt Companies' failure to understand the circumstances attendant to a failure to comply with the laws of the United States regarding the generation and disposal of hazardous waste.

94.     TDC employees in Baton Rouge, Louisiana and elsewhere undertook and completed numerous efforts properly to manage The Stolt Companies' patrimony, including its

-19-

environmental obligations, and did thereby protect and secure the interests of The Stolt Companies which, otherwise, would have been in violation of federal law and subject to substantial fines, penalties, and remediation costs.

95. TDC acted as a prudent administrator of the affairs and obligations of The Stolt Companies.

96. TDC thereby incurred extensive costs and is entitled to be reimbursed for said costs.

**WHEREFORE**, TDC prays for judgments against The Stolt Companies, jointly and severally, in an amount to be proven at trial, but not less than $2,008,188.99 together with legal interest thereon and for all other relief as is lawful and equitable under the premises.

## PRAYER FOR RELIEF

**WHEREFORE**, TDC prays for judgment in its favor and against The Stolt Companies individually, jointly and severally, for breach of contract, alternatively for Misrepresentation and Detrimental Reliance, Unjust Enrichment, and under the Doctrine of Negotiorum Gestio, in an amount to be proven at trial but not less than $2,008,188.99 together with legal interest thereon and for all other relief as is lawful and equitable under the premises.

        Respectfully submitted,
        **deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ**
        618 Main Street
        Baton Rouge, LA 70801
        Phone: (225) 344-3735
        Fax: (225) 267-4545

        By:    *s/ C. Frank Holthaus*
                  C. FRANK HOLTHAUS, BAR NO. 06976
                  SCOTT H. FRUGÉ, BAR NO. 21599
                  STEPHANIE M. BORGHARDT, BAR NO. 33465