# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

TDC, L.L.C.

CIVIL ACTION

VERSUS

NO. 13-670-JJB-SCR

STOLT-NIELSEN TRANSPORTATION
GROUP B.V., ET AL.

## RULING ON MOTION TO STAY PENDING ARBITRATION

This matter is before the Court on the Defendant Stolt Tankers B.V.'s (f/k/a Stolt-Nielsen Transportation Group B.V.) Motion (doc. 7) to Dismiss or Stay Pending Arbitration and/or Motion to Dismiss for Improper Venue. Plaintiff TDC, L.L.C. opposed the motion. (Doc. 11). Jurisdiction is based on 28 U.S.C. § 1332. Oral argument is not necessary.

Per the amended complaint in this matter, the plaintiff and defendant entered into an agreement on December 22, 2009, whereby the defendant—Stolt Tankers B.V.—agreed to transport the plaintiff's Sodium Hydrosulfide product. (Doc. 6, p. 5, ¶ 14). The agreement—which the plaintiff attached to the complaint and incorporated by reference—included the following arbitration provision:

> **24. Arbitration:** Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York, Owner and Charterer each appointing an arbitrator, who shall be a merchant, broker or individual experienced in the shipping business; the two thus chosen, shall nominate a third arbitrator who shall be an admiralty lawyer. Such arbitration shall be conducted in conformity with the provisions and procedures of the United States Arbitration Act, and a judgment of the court shall be entered upon any award made by said arbitrators. Nothing in this clause shall be deemed to waive Owner right to a lien on the cargo for freight, deadfreight, or demurrage. United States Law shall govern this agreement. For disputes involving less than USD 25.000, SMA simplified arbitration procedure shall be used.

(Doc. 6-1, p. 8). The plaintiff contends that on or around May 6, 2011, the defendant contaminated and destroyed the Sodium Hydrosulfide product it was transporting by mixing

1

Arcol Polyol F30340 with the Sodium Hydrosulfide, and in doing so, created a "hazardous waste by characteristic" under RCRA. (Doc. 6, p. 8, ¶ 26). In the bill of lading, the parties expressly provided that this shipment was subject to the terms of the December 22, 2009 agreement, including the arbitration clause. (Doc. 7-6, p. 1). The plaintiff contends that the defendant refused to clean up or otherwise dispose of this contaminated material. (Doc. 6, p. 8–12). According to the complaint, the plaintiff and defendant subsequently entered into an oral agreement on October 10, 2011. (Doc. 6, p. 13). As per this alleged oral agreement, the defendant's representative promised that it would reimburse the plaintiff for the "cost of properly managing and disposing of Stolt's hazardous waste." (Doc. 6, p. 13, ¶ 54). The plaintiff claims that these costs have not been paid, and thus, brought this action asserting claims of relief for breach of contract, misrepresentation and detrimental reliance, unjust enrichment, and *negotiorum gestio*.

In its motion, the defendant argues that this action should either be dismissed or stayed pending the mandatory New York arbitration, as provided in the arbitration provision of the December 22, 2009 agreement. (Doc. 7, p. 1). In opposition, the plaintiff contends that the October 10, 2011 oral agreement was "stand-alone and independent of the December 22, 2009, agreement," and as a result, the claims in the pending matter are not subject to the arbitration clause.

The Federal Arbitration Act (FAA) provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

2

9 U.S.C. § 2. Furthermore, the FAA gives courts the authority to stay a proceeding pending arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. In fact, the Supreme Court provides that "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Supreme Court previously stated that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). The Fifth Circuit echoed this sentiment in *Neal v. Hardee's Food Systems*, where it provided that it "resolve[s] doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration." 918 F.2d 34, 37 (5th Cir. 1990) (citing *AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986)). Furthermore, "arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 338 (5th Cir. 1984); *Wick v. Atlantic Marine*, 605 F.2d 166, 168 (5th Cir. 1979)).

"Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998). There is no dispute in the present matter that the parties entered into a valid arbitration agreement

Case 3:13-cv-00670-JJB-SCR   Document 19   03/07/14   Page 3 of 7

in the December 22, 2009 agreement. The primary issue is "whether the dispute in question falls within the scope of that arbitration agreement." *Id.*

The parties in the present case agreed to a broad arbitration clause, whereby they agreed to arbitrate "[a]ny dispute arising from the making, performance or termination" of the original agreement. *See id.* at 1067 (Fifth Circuit found that a similar arbitration clause was characterized as a broad arbitration clause "capable of expansive reach"). As the Fifth Circuit previously stated, "[b]road arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* (citing *J.J. Ryan & Sons v. Rhone Poulenc Textile*, 863 F.2d 315, 321 (4th Cir. 1988); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)).

The Fifth Circuit previously found that a broad arbitration clause contained in a contractual agreement could cover disputes involving a separate, contemporaneously-executed agreement that was an "integral and interrelated [part] of the one deal." *Neal*, 918, F.2d at 37. Yet, that is not the case in the present matter. This Court has been unable to find Fifth Circuit precedent that specifically addresses whether a subsequently-executed, collateral agreement falls within the scope of a broad arbitration clause. Nevertheless, the Second Circuit has provided guidance regarding when a collateral agreement is subject to a broad arbitration clause. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 228–29. In *Louis Dreyfus*, the Second Circuit analyzed whether the plaintiff's "claim for indemnification under the letters of indemnity [were] not brought directly under the charter agreement, but [were] made under a collateral agreement." *Id.* at 228. The court explained that "a collateral agreement is 'a separate, side agreement, connected with the principal contract which contains the arbitration

Case 3:13-cv-00670-JJB-SCR   Document 19   03/07/14   Page 4 of 7

clause.'" *Id.* (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983)). In analyzing the letters of indemnification, the Second Circuit focused on the fact that the letters "were issued subsequent to the charter party [agreement] and [were] not specifically incorporated or even referenced by [the] agreement." *Id.* Additionally, the charter party agreement did not even provide for indemnification; only the letters of indemnity referenced any indemnification obligation. *See id.* Based on its review, the Second Circuit found that "[a]bsent any reference by the charter party to the letters, or language indicating that the letters themselves incorporated the charter, [claims under the letters of indemnity] must be deemed collateral to the main agreement." *Id.* (citing *Fairmont Shipping (H.K.), Ltd. v. Primary Indus. Corp.*, 1988 WL 7805, at *4 (S.D.N.Y. Jan. 25, 1988)). Despite being collateral, the Second Circuit went on to say that because the charter party agreement contained a broad arbitration clause whereby the parties agreed "that any dispute between [them] . . ., brought pursuant to the agreement, would be arbitrated in New York," the court needed to "test the 'presumption of arbitrability' associated with a broad arbitration clause by asking whether claims under letters of indemnity—as claims under a collateral agreement—'implicate [ ] issues of contract construction or the parties' rights and obligations under it.'" *Id.* at 220–21, 228–29 (quoting *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). Ultimately, the court found that "[b]y implicating the rights of [the defendant] and the duties of [the plaintiff] under the charter party, the letters of indemnity [were] within the scope of the broad arbitration clause." *Id.* at 229.

To determine whether a collateral agreement falls within the scope of a broad arbitration clause, the Court "focuses on the factual allegations underlying the causes of action rather than the legal labels asserted." *CBG Marine Services Co. v. M/S STOLT ENTENTE*, 1990 WL 134664, at *7 (E.D. La. Sept. 12, 1990) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–*

5

*Plymouth Corp.*, 473 U.S. 614, 620–28 (1985)). In this case, while the plaintiff asserts contractual claims related to the defendant's alleged breach of the October 10, 2011 oral agreement, it is clear that the plaintiff is ultimately seeking to recover the disposal costs it incurred in relation to the contaminated Sodium Hydrosulfide. As per the complaint, the defendant insisted that the plaintiff take delivery of the Sodium Hydrosulfide product, regardless of the contamination. (*See* doc. 6, p. 8–11). Because the defendant required TDC to take delivery, TDC was forced to arrange for the transportation, storage, and disposal of the contaminated material. (Doc. 6, p. 11). Thereafter, on October 11, 2011, the plaintiff alleges that a Stolt representative orally promised to reimburse TDC for these disposal costs. (Doc. 6, p. 13–14). Nevertheless, Stolt never paid the costs, and the plaintiff alleged that it incurred approximately $2,008,188.99 in transporting, storing, and disposing of the contaminated Sodium Hydrosulfide. (Doc. 6, p. 14). In making each claim for relief in the present suit, the plaintiff seeks the sum of $2,008,188.99—the exact cost incurred in disposing of the contaminated product. (Doc. 6, p. 16–20). Therefore, through the contractual claims for relief, it is readily apparent that the plaintiff is ultimately seeking to recover the transportation, storage, and disposal costs it incurred in disposing of the contaminated material.

Based on the long line of precedent favoring arbitration, and due to the fact that the arbitration clause in the present matter is "broad," this Court finds that the present dispute does fall within the parties' arbitration provision. Regardless of how the plaintiff couches its claims, it is clearly seeking to recover the costs to dispose of the contaminated material, costs which the plaintiff contends the defendant promised to pay. "If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846

Case 3:13-cv-00670-JJB-SCR   Document 19   03/07/14   Page 6 of 7

(2d Cir. 1987). The plaintiff incurred these costs through having to dispose of Hydrogen Sulfide that the defendant allegedly contaminated while transporting it pursuant to the December 22, 2009 agreement. The costs arose directly out of the performance that is the subject of the charter party agreement, an agreement that contained the broad arbitration clause subjecting "[a]ny dispute arising from the making, performance or termination" of the agreement to arbitration in New York. While the claims here specifically relate to the defendant's alleged breach of an oral agreement to pay the disposal costs, those costs were incurred during and as a result of the execution of the December 22, 2009 agreement. This Court cannot say "with positive assurance that [this] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," and based on Fifth Circuit precedent, the action must be stayed pending arbitration. *Neal*, 918 F.2d at 37. Accordingly, based on the broad arbitration clause and the long-line of precedent establishing a strong policy in favor of arbitration, this Court finds that the plaintiff's pending claims fall within the ambit of the arbitration provision.

Therefore, the Court **GRANTS** the Motion (doc. 7) to Dismiss or Stay Pending Arbitration and/or Motion to Dismiss for Improper Venue. Accordingly, all claims are **DISMISSED WITHOUT PREJUDICE**, in favor of arbitration.

Signed in Baton Rouge, Louisiana, on March 7, 2014.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

7